IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| T. AND B. EQUIPMENT COMPANY, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RI, INC. d/b/a SEATING SOLUTIONS ) <br> ) <br> **Serve:** National Registered Agents, Inc., ) <br> Registered Agent ) <br> 4001 North Ninth Street, Suite 227 ) <br> Arlington, Virginia 22203 ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 3:15CV0337 |

## COMPLAINT

Plaintiff, T. and B. Equipment Company, Inc. ("T&B"), by counsel, states as follows for its Complaint against RI, INC. d/b/a Seating Solutions ("Defendant"):

### NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE

1. T&B brings this action pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 for declaratory judgment.

2. T&B is Virginia corporation with its principal place of business in Ashland, Virginia.

3. Upon information and belief, Defendant is a New York corporation with its principal place of business in Commack, New York.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties.

5. Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) and Rule 3 of the Local Rules of this Court.

## BACKGROUND FACTS

6. Defendant is a corporation specializing in the sale, rental, installation and removal of custom designed spectator seating.

7. T&B is a corporation that specializes in indoor and outdoor event seating solutions, including but not limited to temporary seating for golf tournaments, concerts, shows and graduations.

8. In or around March of 2012, T&B engaged in discussions with Defendant because it was interested in purchasing a new seating system, specifically the "Box Seat 901" system (the "901 Box Seats"). Prior to its discussions with Defendant, T&B had been made aware of the existence of the 901 Box Seats as early as 2010 through displays at industry trade shows, including the Stadia Design & Technology Expo at the Javits Center in New York City, New York on April 26-28, 2010.

9. In response to T&B's interest in purchasing the 901 Box Seats, Defendant sent T&B a written quote on March 14, 2012 (the "March Quote") and again on April 19, 2012 (the "April Quote"). A copy of the March Quote is attached hereto as **Exhibit A** and a copy of the April Quote is attached hereto as **Exhibit B**. In connection with these quotes, Defendant also provided a prototype of the 901 Box Seat.

10. Also in and around the spring of 2012, Defendant approached T&B about a possible acquisition of Defendant's equipment rental business.

11. In conjunction with T&B's possible acquisition of Defendant's equipment rental business, the parties executed a Mutual Non-Disclosure Agreement (the "NDA") on April 24, 2012. A copy of the NDA is attached hereto as **Exhibit C**.

12. The NDA by its clear and express language pertains to the exchange of "certain information and materials necessary or related to the potential acquisition of all or part of [Defendant]." NDA ¶ A. The NDA defines information as "all non-public information disclosed hereunder, whether written, oral or recorded in or on any media, that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential," but expressly excludes information which "has been or becomes published or is now, or in the future, in the public domain," "property within the legitimate possession of the Receiving Party," or information which is "lawfully received from a third person." NDA ¶ 3.

13. The NDA also contains a non-exclusivity provision. That provision states:

> Disclosing Party acknowledges that the Receiving Party may currently or in the future be developing information internally, or receiving information from other persons, that is similar, related or substantially identical to the information, exploring opportunities with other persons similar, related or identical to the Purpose or similar business opportunity, or having developed on its behalf products, concepts, systems or techniques that are similar to or competitive with the products, concepts, systems or techniques contemplated by or embodied in this information. *Accordingly, notwithstanding this Agreement, nothing herein shall be construed as creating any exclusive relationship or exclusivity obligation*, nor as a representation or agreement by either Party that it shall not explore such opportunities, develop or have developed for it such information, or explore or develop such products, concepts, systems or techniques, *or that it shall not compete with the other Party or enter into agreements in conflict with or competitive with the other Party*, or compete through the sale of products or services, nor shall there exist any duty to disclose or offer any right to participate in the foregoing provided that the Receiving Party does not violate any of its obligations under this Agreement or any

> other agreement entered into by the Parties or by which either Party is bound.

NDA ¶ 11 (emphasis added).

14. On April 24, 2012, after execution of the NDA, T&B sent a due diligence checklist to Defendant. Defendant never responded or provided any information to T&B pursuant to the NDA, and there were no further discussions between T&B and Defendant regarding the NDA or an acquisition of Defendant by T&B.

15. On June 29, 2012, T&B received an unsolicited email communication from The Product People Int'l Pty Ltd ("The Product People"), offering to sell 901 Box Seats to T&B. Upon information and belief, The Product People is the developer and manufacturer of 901 Box Seats and of the entire BOX Seat range of seating products.

16. Defendant reports that it became aware that T&B subsequently purchased approximately 10,690 901 Box Seats from The Product People.

17. In December 2012, T&B received a letter from Defendant (the "December 2012 Letter"), claiming that T&B's purchase of the 901 Box Seats was a violation of the NDA, on the basis that Defendant had shared information regarding the 901 Box Seats while there was a "nondisclosure non-compete in place" and further claiming that T&B was only aware of the 901 Box Seat system "because of" the NDA. A copy of the December 2012 letter is attached hereto as **Exhibit D**.

18. Defendant's allegations regarding T&B's knowledge and awareness of the 901 Box Seats were false. Long before the execution of the NDA, T&B had seen the 901 Box Seat displayed at trade shows and elsewhere on public display, and was well aware that The Product People was the developer and manufacturer of 901 Box Seats and of the entire BOX Seat range of seating products.

Case 3:15-cv-00337-HEH Document 1 Filed 06/04/15 Page 5 of 7 PageID# 5

19. In February 2015, T&B received a renewed demand from Defendant, this time through a letter from counsel to Defendant (the "February 2015 Letter"), claiming that T&B breached the NDA by purchasing 901 Box Seats from The Product People, and demanding that T&B pay Defendant Thirty Dollars ($30.00) for each 901 Box Seat purchased. A copy of the February 2015 Letter is attached hereto as **Exhibit E**.

20. By letter dated March 5 2015, counsel for T&B responded to the February 2015 Letter, setting forth T&B's position as to why T&B's purchase of 901 Box Seats from The Product People did not violate the NDA in any respect (the "March 2015 Letter"). A copy of the March 2015 Letter is attached hereto as **Exhibit F**.

21. In April 2015, T&B received a second demand letter from counsel to Seating Solutions, again claiming that T&B breached the NDA by purchasing 901 Box Seats from The Product People (the "April 2015 Letter"). A copy of the April 2015 Letter is attached hereto as **Exhibit G**.

22. Defendant's demand that T&B pay it Thirty Dollars ($30.00) for each of the approximately 10,690 901 Box Seat Purchased from The Product People, for a total of Three-Hundred Twenty Thousand Seven Hundred Dollars ($320,700).

## COUNT I
### DECLARATORY JUDGMENT

23. T&B hereby incorporates by reference all allegations set forth above in paragraphs 1 through 22 as if fully set forth herein.

24. T&B did not breach the NDA by purchasing 901 Box Seats from The Product People. T&B knew of the existence of the 901 Box Seats, and knew that 901 Box Seats had been developed and manufactured by The Product People, prior to entering into the NDA with Defendant.

5

25. The NDA, by its plain language, acknowledges that T&B may enter into transactions with other similar or identical businesses. Moreover, the mere existence of the 901 Box Seats or the identity of the manufacturer of the 901 Box Seats do not constitute information that was "designated as confidential" by Defendant or that, "given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential," as required by the NDA. Moreover, the specifics of the 901 Box Seats had nothing whatsoever to do with T&B's potential acquisition of Defendant's rental business.

26. Pursuant to 28 U.S.C. § 2201 *et seq.*, the Court has the authority to declare the rights and obligations of T&B under the NDA.

27. Defendant's demand that T&B pay it a total of $320,700 creates an actual and justiciable controversy concerning the interpretation of the NDA, and in which T&B has a justiciable interest.

WHEREFORE, T&B requests that this Court:

(i) Enter a declaratory judgment in favor of T&B concluding that T&B did not violate the terms of the NDA by purchasing 901 Box Seats from The Product People and that T&B has no liability, monetary or otherwise, to Defendant;

(ii) Award T&B its costs and reasonable attorney's fees as provided for in the NDA; and

(iii) Grant T&B such other and further relief as this Court deems just and appropriate.

T. AND. B. EQUIPMENT COMPANY, INC.

By: _____
Counsel

Courtney Moates Paulk (VSB No. 45523)
Kelly J. Bundy (VSB No. 86327)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 21218
Telephone:   (804) 771-9500
Facsimile:   (804) 644-0957
E-mail:      cpaulk@hf-law.com
             kbundy@hf-law.com

6676344-2 021797.02181