UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

T. AND B. EQUIPMENT COMPANY, INC.,

                          Plaintiff,

v.                                                         Civil Action No. 3:15-CV-337

RI, INC.

                          Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss for Improper Venue and Incorporated Memorandum of Law ("Motion") (ECF No. 4), filed by Defendant on July 20, 2015. Plaintiff filed a response in opposition on July 31, 2015 ("Opp'n Mem.") (ECF No. 6), and Defendant subsequently filed a reply on August 6, 2015 ("Reply Mem.") (ECF No. 7). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court DENIES the Motion.

### I.    BACKGROUND

This action for declaratory judgment stems from an agreement to purchase a new outdoor seating system. Defendant RI, Inc. d/b/a Seating Solutions ("Defendant" or "RI") is a New York Corporation with its principal place of business in Commack, New York. Defendant specializes in the sale, rental, installation and removal of custom designed spectator seating. Plaintiff T. and B. Equipment Company, Inc. ("Plaintiff" or "T&B"), a Virginia corporation, specializes in indoor and outdoor event seating solutions, including but not limited to temporary seating for golf tournaments, concerts, shows and graduations.

In or around March 2012, Plaintiff initiated discussions with Defendant because it was interested in purchasing a new seating system, specifically the "Box Seat 901" system

(hereinafter, the "901 Box Seats"). Plaintiff claims that prior to its discussions with Defendant, Plaintiff had been made aware of the existence of the 901 Box Seats as early as 2010 through displays at industry trade shows, including the Stadia Design & Technology Expo at the Javits Center in New York City, New York. In response to Plaintiff's interest, Defendant sent Plaintiff a written quote on March 14, 2012, (Compl. Ex. A), and again on April 19, 2012, (*id.* at Ex. B).

Also in the spring of 2012, Defendant approached Plaintiff about a possible acquisition of Defendant's equipment rental business. In conjunction with Plaintiff's possible acquisition, the parties executed a Mutual Non-Disclosure Agreement (the "NDA") on April 24, 2012. (*Id.* at Ex. C). The NDA is governed by and construed in accordance with New York law. (*Id.* at ¶ 17.) After Plaintiff sent Defendant a due diligence checklist on April 24, 2012, there were no further discussions between the parties.[1]

On June 29, 2012, Plaintiff received an unsolicited email from The Product People Int'l Pty Ltd ("The Product People") offering to sell the 901 Box Seats to Plaintiff. The Product People is the developer and manufacturer of the seats. Defendant reports that it became aware that Plaintiff purchased approximately 10,690 901 Box Seats from The Product People.

In December 2012, Plaintiff received a letter from Defendant claiming that Plaintiff's purchase of the 901 Box Seats from The Product People was a violation of the NDA, on the basis that Defendant had shared information regarding the 901 Box Seats while there was a "nondisclosure non-compete in place" and further claiming that Plaintiff was only aware of the 901 Box Seats "because of" the NDA. (*Id.* at Ex. D.) In February 2015, Plaintiff received a demand letter from Defendant claiming that Plaintiff breached the NDA by purchasing the Box Seats from The Product People, and demanding that Plaintiff pay Defendant thirty dollars for each seat purchased, for a total of $320,700. (*See id.* at Ex. E.)

---

[1] In its opposition memorandum, Plaintiff submits that after receiving the executed NDA and the due diligence checklist, Scott Suprina, President of RI, called Plaintiff and indicated that he did not wish to provide certain information that Plaintiff needed in order to proceed with the acquisition of Defendant's equipment rental business. (Opp'n Mem. at 2.)

Plaintiff filed the Complaint in the above-styled case on June 4, 2015. The one-count Complaint seeks a declaratory judgment that Plaintiff did not breach the NDA by purchasing the 901 Box Seats from The Product People, and requests the Court to declare that Plaintiff has no liability, monetary or otherwise, to Defendant. Defendant then filed the present Motion on July 20, 2015, arguing that the Court should dismiss the case for improper venue, or alternatively transfer the action to the United States District Court for the Eastern District of New York where Defendant is located.

## II. LEGAL STANDARD

A motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is a defense pleaded in the first responsive pleading or made by motion filed by a defendant. *Douglas v. D.B. Va., LLC*, No. 4:10CV80, 2010 WL 5572830, at *2–3 (E.D. Va. Dec. 13, 2010). When a defendant challenges proper venue, the plaintiff bears the burden of establishing that venue is proper. *Id.* at 3 (citations omitted). But if no evidentiary hearing is held, "the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citation omitted). The court need not accept the pleadings as true, but instead may consider outside evidence. *Id.* However, the Court must still draw all inferences in favor of the plaintiff. *Silo Point II LLC v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008). "If venue is found to be not proper in the judicial district, the court may dismiss the action, or transfer the action to a district where it otherwise could have been brought in the interest of justice." *Douglas*, 2010 WL 5572830, at *3 (citing 28 U.S.C. § 1406(a)).

## III. DISCUSSION

### (1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to assert improper venue as a defense to a claim for relief. Fed. R. Civ. P. 12(b)(3). Venue is proper in

> (1) a judicial district in which any defendant resides[2], if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Specifically with regards to the second prong, "in determining whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the action," but instead "should review the entire sequence of events underlying the claim." *Mitrano*, 377 F.3d at 405 (citations and internal quotation marks omitted). For a contract dispute, "courts have recognized that particular attention should be paid to those core aspects of any contract dispute, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Wye Oak Tech., Inc., v. Republic of Iraq*, No. 1:09cv793, 2010 WL 2613323, at *10 (E.D. Va. June 29, 2010). Additionally, a court may consider, "the event that allegedly entitled the plaintiff to the payment [now] sought under the contract." *Mitrano*, 377 F.3d at 406. In *Mitrano*, the Fourth Circuit considered a breach of contract action for nonpayment of attorney's fees. *See id.* at 404. The Court held that the performance of the legal services at issue was the event that allegedly entitled the plaintiff to the payment sought under the contract. *Id.* at 405–06. "Indeed, it was [plaintiff's] work that allegedly created his entitlement to the payment he now seeks. For that reason, depending on the amount of work that [plaintiff] completed in the Eastern District, that work alone may be sufficient to justify venue there." *Id.* at 406.

---

[2] When a defendant is a corporation, it resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). Although Plaintiff's Complaint articulates both 28 U.S.C. § 1391(b)(1) and (b)(2) as bases for venue, Plaintiff's response in opposition notes that "the correct venue provision in this case and the provision under which T&B is proceeding" is § 1391(b)(2). (Opp'n Mem. at 4 n.1.) Therefore, only § 1391(b)(2) will be addressed in this memorandum opinion.

4

"As a result of the 'substantial part' wording of § 1391, it is possible for venue to be proper in several judicial districts." *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Mitrano*, 377 F.3d at 405). Thus, a plaintiff need not demonstrate "that his chosen venue has the most substantial contacts to the dispute," but "[r]ather it is sufficient that a substantial part of the events occurred in that venue, even if a greater part of the events occurred elsewhere." *Id.* (citations omitted).

In the present action, Defendant contends that "[t]here is no allegation in the Complaint that any event related to the declaratory judgment claim occurred in Virginia," (Mot. at 2), and thus argues that Plaintiff has "provided no connection to Virginia," (*id.* at 3.) In its reply, Defendant further asserts that Plaintiff's "*primary* claim in this matter is that its alleged prior knowledge of the 901 Box Seat that it obtained during a prior visit to New York places the information subsequently disclosed by [Defendant] outside the scope and protections of the NDA, and that therefore [Plaintiff] has no liability thereunder." (Reply Mem. at 6) (emphasis added). "As a result, because [Plaintiff] alleges that it first observed [Defendant's] proprietary information in New York in 2010, and argues that this prevents it from violating the NDA, the substantial part of events constituting [Plaintiff's] declaratory judgment claim only occurred in New York." (*Id.* at 7.) However, upon review of Plaintiff's Complaint and the attached documents, Defendant's argument is not entirely true.

Plaintiff filed its Complaint seeking a declaratory judgment that it did not breach the NDA by purchasing the 901 Box Seats from The Product People. (Compl. ¶ 24.) Plaintiff's claim is based on several explanations. (*See id.* at Ex. F.) First, as Defendant contends, Plaintiff claims that it "knew of the existence of the 901 Box Seats, and knew that the 901 Box Seats had been developed and manufactured by The Product People, prior to entering into the NDA with Defendant." (*Id.*) But Plaintiff also claims that "[t]he NDA, by its plain language, acknowledges that T&B may enter into transactions with other similar or identical business." (*Id.* at ¶ 25.) Plaintiff further asserts that "there mere existence of the 901 Box Seats or the identity of the

5

manufacturer of the 901 Box Seats do not constitute information that was 'designated as confidential' by Defendant or that, 'given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential,' as required by the NDA." (*Id.*) Finally, Plaintiff notes that "the specifics of the 901 Box Seats had nothing whatsoever to do with T&B's potential acquisition of Defendant's rental business." (*Id.*) Thus, the Court will not only focus on Plaintiff's first defense–that being, Plaintiff had prior knowledge of the 901 Box Seats before entering into the NDA. Instead, a review of the "entire sequences of events underlying the claim," *Mitrano*, 377 F.3d at 405, reveals that a substantial part of the events giving rise to the claim occurred in Virginia, and thus venue is proper here.[3]

As alleged in the Complaint, Plaintiff is a Virginia corporation with its principal place of business in Ashland, Virginia. (Compl. ¶ 2.) In March 2012, Plaintiff engaged in discussions with Defendant because it was interested in purchasing the 901 Box Seats. (*Id.* at ¶ 8.) In response to Plaintiff's interest, Defendant sent Plaintiff a written quote by e-mail on March 14, 2012, (*id.* at Ex. A; Ellis Aff. at ¶ 7), and again on April 19, 2012, (*id.* at Ex. B; Ellis Aff. at ¶ 8). Defendant also sent a prototype of the 901 Box Seat to Plaintiff's offices in Ashland, Virginia. (Ellis Aff. at ¶ 6.) In the spring of 2012, Defendant approached Plaintiff regarding a possible acquisition of Defendant's equipment rental business. (Compl. at ¶ 10.) Specifically, Scott Suprina, President of Defendant, visited Plaintiff's Ashland, Virginia office in the spring 2012 to discuss the acquisition. (Ellis Aff. at ¶ 10.) This was the only face-to-face meeting between Plaintiff and Defendant. (*Id.* at ¶ 21.) In connection with Plaintiff's possible acquisition of Defendant's equipment rental business, the parties executed the NDA. (Compl. at ¶ 11.) Plaintiff executed the NDA at its offices in Ashland, Virginia. (Ellis Aff. at ¶ 12.) No one from Plaintiff's offices traveled to Defendant's offices in New York. (*Id.*)

---

[3] The Court does not comment on whether New York may also be a proper venue for the instant action. *See Power Paragon, Inc.*, 605 F. Supp. 2d at 726 (venue may be proper in more than one district).

Plaintiff's subsequent purchase of the 901 Box Seats from The Product People occurred in Virginia. (Opp'n Mem. at 8.) After Plaintiff's purchase of the 901 Box Seats, Plaintiff received a letter from Defendant at its offices in Ashland, Virginia in December 2012 claiming that Plaintiff violated the NDA. (Compl. at ¶ 17, Ex. D; Ellis Aff. at ¶ 17.) In February 2015, Plaintiff received a renewed demand letter from Defendant claiming that Plaintiff breached the NDA by soliciting and purchasing the 901 Box Seats from The Product People, and demanding that Plaintiff pay Defendant thirty dollars for each 901 Box Seat purchased. (Compl. at ¶ 19, Ex. E.) Plaintiff responded by letter dated March 5, 2015, setting forth Plaintiff's position as to why Plaintiff's purchase of the 901 Box Seats from The Product People did not violate the NDA. (*Id.* at ¶ 20, Ex. F.) In April 2015, Plaintiff received a second demand letter from Defendant, alleging that Plaintiff violated the NDA by purchasing items directly from The Product People. (*Id.* at ¶ 21, Ex. G.)

With the foregoing facts in mind, it is clear that a substantial part of the events giving rise to the instant claim occurred in Virginia. Defendant directed letters, emails, and telephone calls to Plaintiff's office in Ashland, Virginia. (*See* Ellis Aff. ¶¶ 12, 14, 17–19.) Plaintiff executed the NDA at its offices in Ashland, Virginia. (*Id.* at ¶ 12.) And the only face-to-face meeting between the parties occurred in Ashland, Virginia. (*See id.* at ¶¶ 10, 20.) In sum, Plaintiff's offices are in Virginia, and Defendant's communications with and visit to Plaintiff's office come within the "sequence of events underlying the claim" at issue here. *See Prod. Group. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004). Finally, the event giving rise to the claim at issue here–i.e., Plaintiff's purchase of the 901 Box Seats from The Product People–occurred in Virginia. *See Mitrano*, 377 F.3d at 406. For those reasons, the Court will not dismiss for improper venue.[4]

---

[4] Defendant also argues that "as in *Power Paragon*, the parties' negotiated a clause in the NDA providing for a choice of law in New York, which should similarly be respected." (Reply Mem. at 8.) But, Defendants' argument fails to recognize the difference between *Power Paragon* and the instant case. The NDA executed in this case only contains a choice of law provision. *(See* Compl., Ex. C. at ¶ 17) ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to

*(2) Motion to Transfer*

Defendant alternatively requests that the Court transfer this action to the United States District Court for the Eastern District of New York where Defendant is located. (Mot. at 1.)[5] However, transfer of this case would also be inappropriate.

Pursuant to 28 U.S.C. § 1406, a district court shall dismiss a case brought in an improper venue, or if it be in the interest of justice, transfer the case to the district or division in which it could have been brought. 28 U.S.C. § 1406(a). 28 U.S.C. § 1404 states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision whether to transfer an action under the statute is committed to the sound discretion of the district court." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citing *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004)). District courts determining whether to grant a motion to transfer under § 1404(a) "typically consider[]: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). The movant bears the burden of showing that transfer is proper. *Id.*

Here, Defendant fails to satisfy its burden in demonstrating that transfer to New York is proper. Defendant only asserts that transfer is appropriate because it "is domiciled in New York and has its principal place of business in Commack, New York;" "the NDA is governed by New York law;" and Plaintiff "alleged in the Complaint that it first learned about the product covered by the NDA in New York." (Mot. at 3.) Defendant does not allege any inconvenience to the parties or lack of access to witnesses. This Court gives deference to Plaintiff's choice of forum

---

conflicts of law thereof."). In contrast, the contract it issue in *Power Paragon* contained a forum selection clause which provided that, "[v]enue shall be the applicable state or federal court in Roanoke, Virginia." *Power Paragon, Inc.*, 605 F. Supp. 2d at 728.

[5] "Defendant is a New York corporation with its principal place of business in Commack, New York." (Compl. ¶ 3.)

because Virginia is Plaintiff's home forum and also has a substantial connection to the alleged cause of action (as described above). *See Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007). For those reasons, the Court denies Defendant's request to transfer the action.

### (3) Attorney's Fees

Both parties request attorney's fees pursuant to paragraph 17 of the NDA, which states: "In any action brought to enforce any provisions of this Agreement or for breach of this Agreement, the *prevailing Party* shall be entitled to recover its costs including reasonable attorney's fees." (Compl., Ex. C. at ¶ 17) (emphasis added). Defendant argues that if the Court denies its Motion, Plaintiff will not be a "prevailing party" because "[d]efeating a motion to dismiss for improper venue will not provide T&B the central relief it sought in the Complaint, which was to be declared to not have violated the NDA." (Reply Mem. at 11) (citing *Chainani v. Lucchino*, 94 A.D.3d 1492, 1492, 942 N.Y.S. 2d 735, 736 (2012)).

The NDA does not define "prevailing party." However in *Chainani*, the court held that "[i]n determining whether a party is a prevailing party, a fundamental consideration is whether that party has prevailed with respect to the central relief sought." 94 A.D.3d at 1494 (citations and internal quotation marks omitted). Therefore, the court will consider "the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope." *Id.* (citations and internal quotation marks omitted). Here, as Defendant argues, Plaintiff has not achieved the central relief it seeks–that being a declaration that it did not breach the NDA. Therefore, the Court denies Plaintiff's request for attorney's fees.

### IV. CONCLUSION

For the foregoing reasons, the Motion is DENIED. In addition, each party's request for attorney's fees is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

//

An appropriate Order shall issue.

>  _____/s/_____
>  James R. Spencer
>  Senior U. S. District Judge

ENTERED this __24th____ day of August 2015.